Ms. Lopez? Yes. Mr. Kernow? Yes. All right. Good morning. This is Judge McKeown. The case for argument is United States v. Martinez-Orosco. We have Judge Hall and Judge Wardlaw here as well. Ms. Lopez, are you on the telephone? Yes, I am. And Mr. Kernow also on the telephone? Yes, I am. All right. You don't have the benefit of a digital clock, although you probably have a watch or some other clock. But I'm going to at least try to give you a little warning when we get down to about two minutes so you'll know what your time is. Since we are on the phone, it's helpful if you would speak clearly and slowly, which I'm sure you would do if you were here. But sometimes it gets lost in the translation on the telephone. You may proceed. Thank you, Your Honor. Sandra Lopez of the Defenders on behalf of Ms. Orosco. Your Honor, if I'd like two minutes of my time to rebuttal. All right. There is a circuit conflict setting up under the second song of Duran. Rodriguez-Lara holds that the second song can only rely on data relating to the age-eligible Hispanic community. As Torres-Hernandez splits with this statement, this Court may either request en banc review of this issue or ignore Torres-Hernandez since Rodriguez-Lara states that where there are panel opinions at conflict, the Court is bound to follow the earlier opinion. And I will be explaining in more detail, but the questions and concerns raised in Torres-Hernandez and Atero regarding the ability of the Hispanic population to actually serve on the jury isn't the proper test for the second prong, but is more appropriately discussed for the third prong regarding systemic exclusion. And if the Court decides to follow Rodriguez-Lara, then Mr. Orosco would be asked for remand to the District Court. He can provide the right data under the right questions. And I think what we need to do is get down to the basics. What is the requirement for the second prong? And the right question under the second prong is simple. Whether there is underrepresentation between the community and the master wheel. Under this prong, neither side of the comparison, either the community or the master wheel, is reduced to take into account actual ability to serve on the jury. Requiring that it be a jury-eligible community on one side of the comparison without doing the same in the master wheel creates an inaccurate comparison and a minimized underrepresentation. Ms. Lopez, let me ask you about your argument that you think there's a circuit conflict. We'll take just a moment. Don't worry, you'll get your time restored. Thank you. Having some technical difficulties. Okay. Okay. So let me go back then. What I'm interested in is this potential for a circuit conflict or some tension in the circuit law. And the difficulty I'm having is this, is there seems to be some tension about what you can do in one of these jury cases if you have only the unrefined data. But given the data that was made available here through the expert consultant, which is the actual refined data, it seems to me that if that's available, that needs to be used and that that point does not actually give rise to a circuit conflict. And I would appreciate your comments on that. Of course. I think there's two issues with that. One, I think Rodriguez-Lara does more than that and actually does say that the proper comparison shouldn't include jury eligible community. So regardless of whether or not you have that data, it's not the proper comparison. And two, that refined data was, in fact, inaccurate. First, as to Rodriguez-Lara, Rodriguez-Lara considered and rejected the notion that the basis for comparison should be a jury eligible community. The court held the standard is the community. And it says, quote, weight of the Supreme Court and circuit authority teaches that for purposes of prima facie case, the proposition of the distinctive group in the jury poll is to be compared with the proposition of the group in the whole community. And it went on to cite Supreme Court precedent stating that the age eligible community is presumptively eligible for grand jury service, even though there may be later disqualifications based on non-residency, alienage, disability and criminal history and other factors. On the other hand, Torres-Hernandez said the opposite. And Torres-Hernandez said that the ultimate basis for comparison is the district's actual percent of jury eligible Hispanics and that the district court cannot look at ineligible Hispanics. So there is a clear conflict. And getting in regards to the refined data or as the gold standard of the government calls it in its response brief, there is inaccuracies. Because issues relating to jury eligibility, such as questions of English proficiency or ability to speak English, it's almost impossible to get that refined data, the actual percentage of Hispanics that meet the criteria for jury eligibility. But isn't that a different question of if you're now attacking the accuracy of the data as opposed to what the data set should be, aren't you? Both. I'm saying that Rodriguez-Lada says what the basis of the comparison should be. It should be the whole community and where the data is available, age eligible community, should be compared to the jury. It doesn't matter if there's more data out there or not. That's the comparison. I don't know if that answers your question, Your Honor. Thank you. But Rodriguez-Lada did look at that issue and considered whether or not we should be looking at jury eligible community and rejected that. Similarly, we've been pre-finding Castaneda rejected the suggestion that issues regarding literacy and educational background in looking at the discrepancies between Mexican-American communities and the Mexican-Americans in the grand jury list. And they found that actual ability to serve is not until the person appears in the district court. And that's part of the problem because we're comparing jury eligible community to a masked wheel where they do not take into account jury eligibility facts and, unfortunately, minimizes the underrepresentation. That's why you can't take it into consideration. And you can't take it into consideration because it's not reliable and it cannot be easily captured through census. And the reason why age eligibility has been an exception, an exception accepted by Supreme Court and Rodriguez-Lada, is because age eligibility can be captured through the census. And I'd like to cite an example. A disqualification for jury service under the statute is if the person is unable to read, write, understand the English language with a degree of proficiency sufficient to fill out satisfactorily the jury questionnaire form. The form is a one-page fill-in-the-bubble questionnaire with basic facts and information. This is such a disqualification full of inferences and assumptions and, unfortunately, stereotypes that it's impossible to capture this data. So it's impossible to say it's a refined data full standard. And, unfortunately, because of these obvious inferences, Mr. Martinez's own evidence that was presented was flawed. Because he asked one question in an effort to obtain jury eligible Hispanics, and he actually asked the question whether Hispanics speak English at least well, when that's not a criteria for jury eligibility. And so we, unfortunately, minimize the Hispanic population to a degree that's unknown at this time, and that's why we would be requesting a remand. You have two minutes remaining. Do you want to save that for rebuttal? Yes, I will. I will be putting myself on mute. All right. So this is David Kernos. Was my turn now? Yes, you may proceed. Well, first, I have to disagree with counsel with regard to the Torres Hernandez case. Torres Hernandez did not align itself with the Arturo standards. In fact, Torres Hernandez, as we point out in our 28-J letter, Torres Hernandez decided not to try and resolve a conflict between Sanchez-Lopez and Arturo, but went off and used the Esquivel standard to judge or make its decision, which is precisely what the district court did in this particular case. Now, when you look at the evolution of this question, you start off with Sanchez-Lopez, and in that particular case, the issue concerning jury eligibility came up because the government, on appeal, attacked the statistics presented by the defendant by saying, well, they didn't present the jury-eligible Hispanics. And this court, the Ninth Circuit, said, well, you don't need to do that because we'll just work. They don't need to do that, and we can just work with the statistics that they did present. And in that particular case, the statistics were such that, as Esquivel stated, it wasn't even a close call as to whether there was an absolute disparity or not. How do you respond to opposing counsel's argument that it's impossible to define a jury-eligible comparison group? Well, but apparently it's not. I mean, their expert did it. If you look at Laura's entire premise was based on the idea that, as you see in the footnote, I believe it's footnote 9. Counsel, may I just follow up for a second? But the argument is that Mr. Weeks didn't do it, that the standard he used is different from the actual standard that is used when a potential juror shows up at the courthouse. Well, frankly, I don't know where that comes from, other than the anecdotal statements that are being made here on appeal. There's certainly nothing in the record to substantiate that. They took the bull by the horns, if you will, and presented all the refined data, which even Rodriguez-Laura admits you can do, and which Sanchez-Lopez says you can do, and presented it. Now, what would happen in a real-world situation is if the defendant came forward only with the standard, the skimpy data that they proposed that they would in their reply brief, then the government would simply come forward with the more refined data, as we did in Esquivel and as Sanchez-Lopez says we can, and simply refine it down to the level that was presented in this particular case. So one way or another, that refined data is going to get for the court. There's no way to avoid it. Do you agree there's a conflict in our cases? I don't believe there is. I think that the Artero case is a logical progression from Sanchez-Lopez and Esquivel. And I've been trying to think of a politic way of commenting on Rodriguez-Laura, and frankly, I can't. I mean, I just think that that opinion takes bits and pieces out of various opinions to include footnote 23 in the Duran case, and patches it together and comes up with a conclusion that I don't think is warranted by any one of those cases. And that is that jury eligibility is not back to standard. That's just your disagreement with it. It's still our case law. Well, it is a case law, but I don't know. So I guess the question is, though, is this whether we like Rodriguez-Laura or not, or even embrace its selective logic, would we need to go and bank so that we can iron out completely what is the standard, without having to pick and choose among different cases? Well, if this panel is not willing to just simply decide that Rodriguez-Laura was wrongly decided, as it decided that Artero was wrongly decided, then maybe we should go and bank. And we're happy to do that, because we're confident we're going to prevail. And do you think that this panel has the authority to say that it was wrongly decided? Well, certainly the panel in Rodriguez-Laura said that. Well, I'm asking you not about the panel in Rodriguez-Laura. I'm asking you about this panel. Do you think that under a Ninth Circuit precedent we have that authority? Well, frankly, I don't think that you are in a position to do that. But I don't think any panel is in a position to do that. Well, if you could cite us to maybe some intervening Supreme Court precedent that casts doubt on our prior decision, which would be the standard, we might be able to do something. Do you have any such case? I do not. Not that I can think of. All right. Do you mean the standard that was set forth in Artero? No. Go ahead. I'm sorry. There are some situations where we can say that intervening Supreme Court authority has cast doubt on our prior opinion, and therefore we're no longer bound by it, and we can move on in a direction that we think is more consistent. No, I don't think you can, because Duran had to do with the women opting out of the jury pool in Missouri, and Castaneda was an equal protection case involving Hidalgo County and their crazy system for picking juries down in the key man system down there. So there's nothing that even comes close on the Supreme Court level to addressing what we're dealing with here. Well, if we take it en banc, perhaps the Supreme Court won't decide it wants to address it, too. Well, maybe so. But I just think that Torres Hernandez governs this case completely, and that there is, in fact, no conflict created by Torres Hernandez, and that, as I said in our 28-J letter, that the record below is precisely, in this case, is precisely the same record as in Torres Hernandez. And the defendant is the one that presented that record. It was nothing that the government presented. Now, the government, in its brief, alludes to some facts that it thinks that we should be able to judicially notice. Yes. Is the situation ñ and I'm not saying whether we would judicially notice them or not, but I'm curious about some of the proper facts, because it could be, possibly, that the Hispanic representation in the community is so much larger than that in the jury pool because there are a lot of non-U.S. citizens in the community? Yes, it's a huge number, at least in this district. That's not something you're likely to be able to get data about. Well, no, because the census data wouldn't reflect that. It would only reflect U.S. citizens. It won't reflect the illegals, and it certainly won't reflect the green card holders and the student visas and the work visas and so on. You have about a minute and a half just for your information. All right. Well, as far as the judicial notice, that is rather based on anecdotal information. But also, if I can refer to our tarot, at page 1262, Judge Kleinfeld does make a remark based on fairly common-sense reasoning when he's talking about the reason that border counties and ports of entrance would have significant numbers of immigrants not eligible to serve on federal juries. And that was just a bald statement made by Judge Kleinfeld, and all I can tell is it was just based on common sense. So I believe you can take judicial notice of the kinds of things that we're asking you to take judicial notice of. And with that, I would submit. Thank you. Ms. Lopez, you have two minutes for your rebuttal. Thank you. Can you hear me? Yes. Thank you. I'd just like to address two points. I think everyone's in agreement that there is a conflict. Rogeria-Slada holds that the comparison should be... Well, I don't think anyone... We haven't made any decisions yet. So maybe you and counsel, that is one thing you maybe agree on, although I'm not sure either about that. All right. Well, Rogeria-Slada does say that the comparison should be between age-eligible Hispanics and the master wheel. Torres-Hernandez says the opposite. You should be looking at jury-eligible Hispanics. And then I'd like to address the issue of refined data. Again, there is a real problem in looking at jury-eligible communities for establishing this comparison, because it's not refined data. The issues regarding jury eligibility are based on inferences and assumptions, and unfortunately, again, stereotypes. It's hard to calculate numbers when we're asked questions about the levels of somebody's ability to speak English. And the census data does not provide it. If we look at Dr. Fink's declaration, he had to go through several steps and ended up getting only an estimation. So it's not a refined data. And also, we need to look again, what is the comparison that we're doing? If we lower the comparison in the community to jury-eligible members without doing the same in the master wheel, which includes jury-eligible and non-jury-eligible Hispanic communities, then we're not fencing the proper comparison and we're minimizing the underrepresentation. Thank you.
judges: Hall, McKeown, Wardlaw